IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JACKIE LEE WILLIAMS, JR., <br>     Petitioner, <br><br> v. <br><br> JEREMIAH BROWN, Warden, <br>     Respondent. | 1:24-cv-1191-JEH |

**Order and Opinion**

    Before the Court is Petitioner Jackie Lee Williams' Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and Motion for Stay of Time (Doc. 10). Petitioner is currently serving a 50-year imprisonment sentence imposed by the Peoria County Circuit Court in Peoria, Illinois, after a jury found him guilty of first degree murder and attempted armed robbery. Petitioner challenges his conviction and sentence. For the reasons below, the Court DENIES the Petition, DENIES the Motion for Stay, and DECLINES to issue a certificate of appealability.

**I**[1]

**A**

    On January 2007, David McCreary was shot and killed in his home. Petitioner, along with codefendants Demarco Spence, Gabriel Shelton, and

---

[1] The facts are taken from the undisputed facts in Respondent's Response (Doc. 7), which are consistent with the official records from Petitioner's state court proceedings, which Respondent attached to the response (Doc. 8; *People v. Williams*, 2020 IL App (3d) 170124-U; *People v. Williams*, 2023 IL App (3d) 210352-U, *appeal denied,* 214 N.E.3d 124 (Ill. 2023). *See* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."). The factual determinations of the state court are presumed to be correct,

Katissue Warfield, were charged in the Circuit Court of Peoria County, Illinois with attempted armed robbery and first-degree (felony) murder. The State also alleged that Petitioner personally discharged the firearm that proximately caused McCreary's death. If proven, this fact would have triggered a mandatory sentence enhancement under 730 ILCS 5/5-8-1(a)(1)(d)(iii)(2006).

Warfield pleaded guilty to attempted armed robbery and agreed to testify against her codefendants in exchange for a 12-year sentence. At subsequent trials, Spencer was convicted of first-degree murder and attempted armed robbery and was sentenced to 44 years in prison, and Shelton was convicted of attempted armed robbery and sentenced to 15 years in prison.

At Petitioner's first trial in 2008, he was convicted of first-degree murder and attempted armed robbery, and found to have personally discharged the firearm proximately causing McCreary's death. He was sentenced to life imprisonment. His conviction was affirmed on appeal. In 2015, however, his postconviction petition was granted on the ground that his appellate counsel was ineffective for not challenging the admission of Petitioner's videotaped statement to police. His conviction and sentence were vacated and his case was set for a second trial.

**B**

Petitioner's second trial occurred in 2016. The prosecution presented evidence that on the night of the shooting Frankie Ratliff, Carolyn Crosswhite, and Crosswhite's young child were in McCreary's house with McCreary and his young child. Crosswhite testified that around 7:30 p.m., McCreary received a phone call. Crosswhite heard what sounded like a "girl's voice" on the other end of the call.

---

unless a petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

About 30 minutes later, there was a knock on the door. Ratliff heard a woman's voice outside. Ratliff and Crosswhite testified that McCreary opened the door. When he did, Crosswhite testified that an armed man with a bandana covering his face barged inside. McCreary and the intruder began to struggle, as Crosswhite and the child she was with went into a bedroom. *People v. Williams*, 2020 IL App (3d) 170124-U, ¶ 7. While in the bedroom, Crosswhite heard multiple gunshots and called 9-1-1.

Ratliff testified that when the door opened, two armed men with covered faces entered the house while a third person waited near the door. Ratliff heard McCreary say, "It's a hit," followed by the sound of two or three gunshots. *Id*. ¶ 6. Ratliff brought the other child and a phone to Crosswhite. *Id*. When he came out of the bedroom a short time later, the intruders were gone, and McCreary was locking the door. *Id*.

A police officer testified that he arrived on the scene and saw that McCreary had a gunshot wound to his head but was still alive. The officer testified that he asked McCreary who shot him and McCreary said "Kadia."

Katissue Warfield testified that she regularly purchased small amounts of marijuana from McCreary. A few days before the shooting, she called McCreary and told him that she and her boyfriend, Petitioner, wanted to purchase two pounds of marijuana. Warfield speculated that amount of marijuana would cost about $2,000, but neither she nor Petitioner had $2,000. On the day of the shooting, Warfield called McCreary to arrange the purchase. That evening, Shelton drove Petitioner to Warfield's house. When they arrived, Petitioner called Warfield and told her to come outside. After Warfield got in the car, Shelton picked up Spencer, who got in the car and handed Petitioner a gun. Warfield then called McCreary and said she was on her way.

When they arrived, Shelton parked on the street behind McCreary's house and waited in the car. Petitioner, Spencer, and Warfield walked to the front of the house. Warfield testified that Petitioner was wearing gloves and had a bandana tied around his face, and Spencer covered his face with his shirt. Warfield knocked on the front door and heard McCreary say, "Come in." When Warfield opened the door, Spencer pushed her to the ground. Warfield could not see what happened next, but she could tell that people were fighting and then heard two gunshots. She ran from McCreary's house, intending to go home. *Williams*, 2020 IL App (3d) 170124-U, ¶ 11. However, before she reached home, Shelton and Petitioner picked her up in the car. *Id.* ¶ 12. Warfield told Petitioner she had lost her phone. Later, in response to Warfield's question about what had happened, Petitioner said, "He should have gave [sic] it up."

Officers also testified that two bullets were found lodged in the walls of the house and a pink cell phone was found on the floor. The pink cell phone was later determined to belong to Warfield. Phone logs showed that on the night of the shooting, Petitioner called Warfield at 7:37 p.m., Warfield called McCreary at 7:52 p.m., and Petitioner placed several calls to Warfield between 8:04 and 9:36 p.m. that went unanswered.

Two days after the shooting, Spencer led police to an alley near McCreary's house, where they recovered a revolver containing three live rounds and three empty casings in the cylinder. A firearms examiner determined that the bullet recovered from McCreary's head and a bullet lodged in the wall of the house had been fired from this gun.

The prosecution also called Spencer and Shelton to the stand. After answering a few introductory questions, Spencer invoked the Fifth Amendment and refused to answer further questions from the State. Outside the presence of the jury, the trial court ordered Spencer to respond to the prosecutor's questions,

4

and held him in contempt of court when he said he would continue to refuse. *Id.* ¶ 20. The prosecution informed the trial court that it intended to continue questioning Spencer in order to lay a foundation for impeachment. *Id.* The defense objected to the prosecution continuing to question Spencer, but the trial court overruled the objection. *Id.* Spencer then continued to assert his Fifth Amendment rights by responding with silence to the prosecutor's questions about whether he remembered testifying at this own trial:

> (1) Gabe Shelton told Spencer that Shelton and a friend of his had been "shorted" one-half pound of marijuana in a drug deal with the victim; (2) Shelton told Spencer he needed a gun; (3) Spencer obtained a gun; (4) Spencer gave the gun to "Jackie;" (5) Spencer was present at the victim's home with Jackie and a female on the night in question; (6) Jackie was wearing a bandana on his face; (7) Jackie "rushed in the crib;" (8) when Spencer got through the doorway he covered his face; (9) Jackie and the victim were "tussling" over the gun; (10) Spencer heard a shot; (11) Spencer assisted the police in retrieving the gun; and (12) Spencer told the police he got the gun from a woman named Breela.

*Id.* ¶ 21.

On cross-examination, Spencer testified that he did not remember the events at issue and had lied at his own trial to protect himself. He also testified that he and McCreary had a heated argument a few weeks before the shooting. But when asked whether he had told McCreary, "This is not the end of it," Spencer backtracked and denied having had an argument with McCreary.

After Spencer finished testifying, the prosecution introduced the transcript of his 2008 trial testimony. In a stipulated procedure, portions were read verbatim from the transcript to the jurors. *Id.* ¶ 23.

The State also put Shelton on the stand as a witness. Shelton did not invoke the Fifth Amendment, but responded to almost every question he was asked with, "I don't remember." The State then introduced Shelton's videotaped statement to

5

police, in which Shelton described the plot to rob McCreary and his role as the driver. On cross-examination by defense counsel, Shelton reiterated that he was forced to testify. Shelton stated that he did not remember making any statements to law enforcement about the victim's death, that the statements were untrue, and that he was doing a lot of heroin at the time. *Id.* ¶ 30.

After the prosecution rested, Petitioner called McCreary's mother, Lillie Mae Griffin, who testified that Spencer and McCreary had an argument a few weeks before the shooting. Defense counsel tried to elicit testimony from Griffin that Spencer had told McCreary, "This is not the end of it," but the trial court sustained the prosecution's hearsay objection.

The jury found Petitioner guilty of first-degree murder and attempted armed robbery, but found that the prosecution had not proven that he personally discharged a firearm proximately causing McCreary's death. The trial court denied Petitioner's motion for a new trial and sentenced him to 50 years in prison.

C

Petitioner appealed, arguing (1) that the state did not meet its burden of proving the underlying felony offense of attempted armed robbery beyond a reasonable doubt, (2) that the trial court erred by admitting Spencer's prior sworn testimony, in part, because the prosecution did not lay a proper foundation and because admission of this testimony violated Petitioner's Sixth Amendment rights under the confrontation clause; (3) the trial court should not have excluded the proposed testimony of Lillie Griffin that she overheard Spencer tell McCreary, "This is not the end of it," and (4) that his sentence is unconstitutional, in part, because it is excessive under the Eighth and Fourteen Amendments. *People v. Williams*, 2020 IL App (3d) 170124-U, ¶ 36–86. The Illinois Appellate Court affirmed Petitioner's conviction and sentence.

Petitioner filed a Petition for Leave to Appeal (PLA) that included his sufficiency of the evidence claim and his claims related to sentencing with the Illinois Supreme Court. The PLA was denied on November 18, 2020. *People v. Williams*, 159 N.E.3d 968 (Ill. 2020). Petitioner did not include his Sixth Amendment confrontation clause claim in the PLA.

**D**

Petitioner next filed a state postconviction motion in the trial court on May 24, 2021. He alleged: (1) his sentence violates the Eighth Amendment and the Illinois Constitution given his age at the time of the offense; and (2) direct appeal counsel was ineffective for not challenging the trial court's limitations on his cross-examination of Warfield and seeking plain-error review of his claim that the trial court improperly considered his videotaped statement at sentencing. The trial court dismissed the petition, and Petitioner appealed. On appeal, Petitioner only claimed that his sentence violates the Illinois constitution. The state appellate court rejected the claim. *People v. Williams*, 2023 IL App (3d) 210352-U. Petitioner raised his state law sentencing claim in a PLA to the Illinois Supreme Court, which was denied on May 24, 2023. *People v. Williams*, 214 N.E.3d 124 (Ill. 2023).

**E**

Petitioner filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on May 20, 2024. He raises three grounds for relief: (1) Petitioner's confrontation clause rights under the Sixth Amendment were violated when Spencer's prior testimony was allowed as impeachment; (2) there was insufficient evidence to support his conviction, and (3) that his sentence was excessive because he was 21 years old at the time of the offense and was not found to have personally killed the victim. Respondent filed its response to the Petition and argues that

Petitioner's claims are either procedurally defaulted, meritless, or non-cognizable. (Doc. 7). Petitioner filed a timely reply. (Doc. 11).

Along with his reply, Petitioner also filed a Motion for a Stay (Doc. 10), seeking a stay of the proceedings to allow him to attempt to exhaust his confrontation clause claim before the Illinois Supreme Court. Respondent filed a response in opposition (Doc. 12). Petitioner has filed a reply brief (Doc. 13). The matter is now ripe for review.

## II

### A

The Court finds the Petition has been filed beyond the one-year statute of limitations that applies to federal habeas petitions challenging state court convictions. *See* 28 U.S.C. § 2244(d). The limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*See* 28 U.S.C. § 2244(d)(1). The limitations period is ordinarily calculated under § 2244(d)(1)(A). *Mayle v. Felix*, 545 U.S. 644, 662 (2005). Under subsection (A), the relevant "judgment" is the date on which the conviction and sentence become

final. *See Burton v. Stewart*, 549 U.S. 147, 156-57 (2007). However, the statute of limitations is tolled during the pendency of a properly filed application for state postconviction relief. *See* 28 U.S.C. § 2244(d)(2).

Petitioner's conviction became final on April 17, 2021, 150 days after his PLA was denied by the Illinois Supreme Court and the time to file a petition for a writ of certiorari expired. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); Miscellaneous Order Addressing the Extension of Filing Deadlines [COVID19], 334 F.R.D. 801 (Mar. 19, 2020). Accordingly, the one-year deadline began to run on that date.

The limitations period ran for 31 days, until May 19, 2021, when it was tolled due to Petitioner's filing of his state postconviction petition. *See* 28 U.S.C. § 2244(d)(2). Petitioner's postconviction proceedings concluded when the Illinois Supreme Court denied his PLA on May 24, 2023.

At that point the limitations period began running again with 334 days remaining. To timely file his Petition, Petitioner needed to file it by April 22, 2024. However, he filed it 28 days late on May 20, 2024. Accordingly, the Court finds that his Petition was untimely under § 2244(d)(1)(A).

Moreover, Petitioner's grounds for relief could not conceivably be timely under § 2244(d)(1)(B)–(D). Petitioner has identified no impediments from bringing his grounds for relief earlier nor was the factual predicate for his claims unavailable as all three grounds for relief were raised in his direct appeal.

The Court also does not find that Petitioner is entitled to equitable tolling. The Supreme Court has held equitable tolling is only available if the petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida,* 560 U.S. 631, 649 (2010) (quoting *Pace v. Diguglielmo,* 544 U.S. 408, 418 (2005). The petitioner seeking the tolling has the burden of demonstrating both elements of the *Holland* test. *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016)

9

(citing *Williams v. Buss*, 538 F.3d 683, 685 (7th Cir. 2008)). And, if either element is not met, the petitioner is not entitled to equitable tolling. *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 755–56 (2016). "Although not a chimera— something that exists only in the imagination, equitable tolling is an extraordinary remedy that is rarely granted." *Carpenter*, 840 F.3d at 870 (quotation marks omitted).

Petitioner concedes his petition is untimely, but alleges his delay should be excused because of his inability to access the law library during prison lockdowns. (Doc. 1 at 11–12). In his reply brief, Petitioner further explains that, from his point of view if one cannot access a law library, they cannot prepare legal documents. (Doc. 11 at 1). He writes that he was at the Pontiac Correctional Facility until 2023, and that at that facility they never opened their law library after COVID. *Id*. Petitioner does not explain how he was able to timely file his state postconviction petition under these conditions, but not his federal petition. Petitioner does not expand on when these lockdowns were or why they prevented him from timely bringing the claims that he brings here, especially considering that he the claims had already been brought in some form in state court proceedings. Moreover, run of the mill claims about limited access to prison law libraries during lockdowns is insufficient to show exceptional circumstances. *See e.g., Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006) (finding no basis for equitable tolling where petitioner alleged he was placed in segregation for 60 days and had no law library access during that time and otherwise had limited law library access). Accordingly the Court does not find that exceptional circumstances exist here.

**B**

**1**

Even if not untimely, Petitioner's confrontation clause violation claim must be dismissed as procedurally defaulted. Prior to considering the merits of a

petitioner's claims, federal courts "must consider which claims have been procedurally defaulted." *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018); *See also Davila v. Davis*, 582 U.S. 521, 527–28 (2017)(Federal courts may not review state prisoners' habeas claims that have been "procedurally defaulted in state court," a doctrine that advances "comity, finality, and federalism interests."). There are two types of procedural default: First, procedural default occurs "where the state court declines to address a petitioner's federal claims because the petitioner did not meet state procedural requirements[.]" *Id.* (quoting *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016)). Second, "[a] state prisoner can procedurally default a federal claim if he fails to 'fairly present' it 'throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings,'" *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017) (quoting *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014)), and "it is clear that those courts would now hold the claim procedurally barred," *Perruquet v. Briley,* 390 F.3d 505, 514 (7th Cir. 2004). Accordingly, "[s]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which in Illinois requires the petitioner to "include his claims in a petition for leave to appeal to the Illinois Supreme Court." *Snow*, 880 F.3d at 864 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–46 (1999)). Here, while Petitioner raised his confrontation clause claim on direct appeal, Petitioner did not include his confrontation clause claim in his PLA.

Moreover, Petitioner has not shown cause to excuse his procedural default. "Procedural default may be excused . . . where the petitioner demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Snow*, 880 F.3d at 864 (quoting *Thomas*, 822 F.3d at 386). "[T]he miscarriage of justice exception applies

11

only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted." *Wilson v. Cromwell*, 69 F.4th 410, 421 (7th Cir. 2023) (internal citations omitted).

Petitioner has not presented any basis to excuse his default and the Court finds no reason apparent from the record. To the extent that Petitioner would fault his direct appeal counsel for failing to raise this issue, he would have needed to raise that claim of ineffective assistance of appellate counsel in his state postconviction proceedings. *See also, Davila v. Davis*, 582 U.S. 521, 529 (2017) (A federal court is not allowed "to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel when a prisoner's state postconviction counsel provides ineffective assistance by failing to raise that claim."). Accordingly, the Court finds that Petitioner's confrontation clause claim must be dismissed for procedural default. [2]

**2**

In a separate motion, Petitioner's also seeks a stay in order for him to allow him to go back and exhaust his confrontation clause claim with the Illinois Supreme Court. (Doc. 10). However, Petitioner is conflating the issue of exhaustion with the issue of procedural default. If Petitioner had merely not exhausted his claim in state court, the Court could either deny the claims on the merits or dismiss the claims without prejudice to allow Petitioner to litigate his claims in state court. *See* 28 U.S.C. § 2254(b)(2). Here, however, Petitioner "has already pursued his state-court remedies and there is no longer any state corrective process available to him," making his procedural barrier to review procedural default and not non-

---

[2] Because the Court agrees that that Petitioner's claim is both untimely and procedurally defaulted, the Court declines to consider Respondent's additional argument that Petitioner's claim should alternatively be denied because the state appellate court's decision on the issue is entitled to deference under § 2254(d).

exhaustion. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). Petitioner has not identified any reason why or how the Illinois state courts would allow him to relitigate this claim now. Accordingly, a stay is neither appropriate, nor would it remove the procedural barrier preventing federal review of Petitioner's claim.

C

A contrary finding on timeliness would also not save Petitioner's second ground for relief—that the evidence was insufficient to prove his guilt beyond a reasonable doubt—from dismissal. This is because in addition to being untimely, the state court's decision on this ground is entitled to deference under 28 U.S.C. § 2254(d)(1). Where a state court has adjudicated a petitioner's claims on the merits, pursuant to § 2254(d), "[a] federal court may grant a federal petition for habeas corpus only if the state court's ruling on the federal constitutional question 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Snow*, 880 F.3d at 863–64 (quoting 28 U.S.C. § 2254(d)); *See also Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (when a state court resolves a claim on the merits, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable.").

"[A] decision is deemed "contrary to" clearly established federal law if the state court reached 'a conclusion opposite to that' of the Supreme Court on a legal matter [ ] or if the state court arrived at an outcome in direct contradiction to a 'materially indistinguishable' case decided by the Supreme Court." *Gambaiani v. Greene,* No. 23-2690, 2025 WL 1378148, at *3 (7th Cir. May 13, 2025) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application of" clearly established federal law if the state court

"identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Coleman v. Hardy,* 690 F.3d 811, 814 (7th Cir. 2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000). However, "federal courts are cautious to grant relief, reviewing state-court factual findings with a healthy dose of deference. . . . The proper inquiry focuses [ ] on whether the alleged factual error is beyond debate." *Gambaiani*, 2025 WL 1378148, at *4.

A constitutional claim that there was insufficient evidence to convict arises under the Fourteenth Amendment and is considered under the standard announced in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Maier v. Smith*, 912 F.3d 1064, 1074 (7th Cir. 2019). In a *Jackson* challenge, the reviewing court must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Saxon v. Lashbrook*, 873 F.3d 982, 987-88 (7th Cir. 2017) (quoting *Jackson*, 443 U.S. at 319). The crime's substantive elements are defined by state law. *Maier*, 912 F.3d. at 662. However, where the state appellate court has ruled on the issue, like here, "the state appellate court determines whether any rational trier of fact could have found the evidence sufficient; . . . a federal court may only overturn the appellate court's finding of sufficient evidence if it was objectively unreasonable." *Saxon*, 873 F.3d at 988.

The Court finds that the Illinois Appellate Court correctly cited to the *Jackson* standard and reasonably reviewed the evidence through this lens. *People v. Williams*, 2020 IL App (3d) 170124-U, ¶ 61. Petitioner was charged with and convicted of felony murder under 720 ILCD 5/9-1(a)(3) based on the underlying felony of offense of attempted armed robbery under 720 ILCS 5/18-2(a)(2). Petitioner argues that the State did not present sufficient evidence to prove his guilty because the evidence does not show that he had a specific criminal intent to

14


commit armed robbery. A person commits armed robbery when he or she takes property from the person or presence of another by the use of force or by threatening the imminent use of force and that person carries on or about his or her person or is otherwise armed with a firearm. *People v. Williams*, 2020 IL App (3d) 170124-U, ¶ 66 (citing 720 ILCS 5/18-1(a), 5/18-2(a)(2)). "A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." 720 ILCS 5/8-4(a).

The prosecution's evidence regarding the specific intent to commit armed robbery came primarily from Warfield. The Illinois Appellate Court rejected Petitioner's argument that this testimony was not credible due to the fact that she was an accomplice, noting that while accomplice testimony should be viewed with suspicion, it is not inherently noncredible and can be sufficient to sustain a conviction. *Williams*, 2020 IL App (3d) 170124-U at ¶¶ 64-65.

The Illinois Appellate Court, also relying primarily on Warfield's testimony, reasonably found that there was sufficient evidence of Petitioner's intent to commit an armed robbery. Warfield testified that after the shooting, she asked Petitioner what happened and he stated "He should have gave [sic] it up." She also testified that, pursuant to Petitioner's instructions, prior to the shooting, she called McCreary and asked to purchase a large quantity of marijuana that she estimated would cost $2000, knowing neither Petitioner nor herself had $2000. The telephone logs between Warfield and McCreary corroborated some of this testimony. Warfield testified that prior to approaching the house, she saw Petitioner take possession of a gun from Spencer and place a black and white bandana on his face that covered his face from the nose down, and she noted that Petitioner was wearing gloves. Once the door to the residence opened, Warfield testified that she was pushed to the ground outside the door and heard people


fighting. Altogether, the court found that "[t]his testimony, if found credible by the jury, provided strong evidence that defendant intentionally took a substantial step toward the commission of armed robbery." *Id.* ¶ 69.

The Illinois Appellate Court further noted that Ratliff and Crosswhite corroborated portions of Warfield's testimony, boosting her credibility:

> Ratliff testified that he saw two men, each armed with separate guns, rush through the victim's front door on the night of the murder. Ratliff did not see a woman enter the residence. However, in addition to the two men, Ratcliff saw a third individual just outside the door on the porch. . . Crosswhite, observed two male assailants and described a black bandana covering one assailant's facial features such that she could only see the assailant's eyes.

*Id.* ¶ 70.[3]

Petitioner argues the Illinois Appellate Court's findings were unreasonable, but his arguments essentially only highlight that the evidence left open his defense. For instance, Petitioner notes (1) the lack of physical evidence that Petitioner was at the scene, (2) that Ratliff and Crosswhite "testified that when the door open up, a mask intruder came in and 'immediately' beg[a]n shooting, no word's was said. Nobody said it's a robbery, give me the money, drugs, nothing to indicate this shooting was remotely about a robbery;" (3) that the victim was found with $700 in his pocket and (4) that Warfield never testified that Petitioner told her they were planning on robbing McCreary. (Doc. 1 at 21–22).

However, it is not enough to say the evidence left room for Petitioner's defense. Petitioner needed to consider "the evidence in the light most favorable to the prosecution" and show that no "rational trier of fact could have found the

---

[3] The Court notes that the Illinois Appellate Court elected to not consider Spencer or Shelton's testimony in the sufficiency of the evidence analysis, which would have further corroborated Warfield's account. *People v. Williams*, 2020 IL App (3d) 170124-U, ¶ 71.

16

essential elements of the crime beyond a reasonable doubt." *Saxon*, 873 F.3d at 988. A trier of fact that credited Warfield's testimony, could have rationally found that Petitioner had a specific intent to commit armed robbery. That Warfield was an accomplice lessens her credibility, but does not erase it. *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[I]t is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar."). Moreover, the prosecution presented evidence that corroborated some of her account, which bolstered her credibility. Accordingly, the Court finds that the Illinois Appellate Court's finding that there was sufficient evidence was objectively reasonable and entitled to deference under § 2254(d).

**D**

Finally, Petitioner claims that he is entitled to relief because his 50-year sentence is excessive because he was 21 years old at the time of the offense and because he was found not guilty of being the shooter. Aside from being untimely, Petitioner's third ground for relief is procedurally defaulted, meritless as a federal constitutional claim, and not cognizable as a state law claim.

Petitioner did raise his as-applied constitutional claim in his direct appeal, but the state appellate court found that the record was not sufficiently developed to consider the claim. *Williams*, 2020 IL App (3d) 170124-U at ¶ 87. As stated above, procedural default occurs "where the state court declines to address a petitioner's federal claims because the petitioner did not meet state procedural requirements[.]" *Snow*, 880 F.3d at 864 (quoting *Thomas*, 822 F.3d at 384). Petitioner did attempt to develop the claim by raising it in his state postconviction petition in the trial court. However, he failed to include the claim in his appeal or in his PLA; instead he only raised his state constitutional claim. Accordingly, the Court finds that the argument is procedurally defaulted.

Moreover, as a federal constitutional claim, Petitioner's claim fails. In 2012, the Supreme Court held in *Miller v. Alabama*, 567 U.S. 460 (2012), that individuals who committed the offense of homicide when they were under 18 years old may only be sentence to life without parole if the sentencing judge has the discretion to impose a lesser punishment. 567 U.S. at 479. However, the Supreme Court further clarified in *Jones v. Mississippi*, 593 U.S. 98 (2021), that the Constitution only requires a sentencing judge to *consider* an offender's youth and attendant characteristics prior to imposing a life without parole sentence. 593 U.S. at 113. "[A] separate factual finding of permanent incorrigibility is not required before a sentencer imposes a life-without-parole sentence on a murderer under 18." *Id*. Petitioner was 21 years old at the time of the offense. While the Court does not discount that his youth was a factor in his decisions, the Supreme Court has only held that offenders *under 18 years old* are entitled to special consideration under the constitution.

Finally, Petitioner is correct that Illinois has additional protections for youthful offenders. However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Petitioner has had the opportunity to present his state law claim to the Illinois state courts. He cannot seek review of this decision in federal court. Accordingly, the Court dismisses his sentencing claim on this ground as well.

## III

Should Petitioner wish to appeal this decision, he must obtain a certificate of

appealability. 28 U.S.C. § 2253(c)(1). A certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This will hold true only when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (1995). Where a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim *and* about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016). Here, the Court does not find that reasonable jurists could disagree that the Petitioner's claims are untimely, as well as either procedurally defaulted, entitled to deference under 28 U.S.C. § 2254(d), not cognizable in federal review, and/or meritless. The Court declines to issue a certificate of appealability.

### IV

The Clerk of Court is directed to enter judgment as follows: Petitioner Jackie Lee Williams' Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is DENIED and his Motion for Stay (Doc. 10) is DENIED. The Court DECLINES to issue a certificate of appealability. This case is CLOSED.

*It is so ordered.*

Entered on May 21, 2025.

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE